**In re H. KRIEGER & CO., Inc.**
**No. 20774.**

District Court, D. Connecticut.
Aug. 13, 1941.

A. D. Slavitt, of South Norwalk, Conn., for debtor.

H. M. Lessin, of South Norwalk, Conn., receiver, per se.

Samuel Gordon, of Stamford, Conn., for creditor, Gordon-Shulman.

HINCKS, District Judge.

An arrangement can be confirmed under Chapter XI only if it is for the best interests of creditors and also is fair and feasible. Bankr.Act Sec. 366, 11 U.S.C.A. § 766. Both of these prerequisites are challenged by the petition in review.

▆ Whether the arrangement here was for the best interest of creditors I do not now decide. I observe only that on the record made by the debtor the question is a close one. There is considerable evidence which indicates that the creditors might fare better if the estate were liquidated. And the fact that a large percentage of the creditors have accepted the arrangement is not conclusive; at most it is prima facie evidence on that issue, Collier, 14th Ed., Vol. 8, p. 1168. Under Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S. Ct. 1, 84 L.Ed. 110, it would appear that the acceptance of the arrangement by creditors, standing alone, is not enough to support a finding that it is in their best interest; such a finding must be supported by independent evidence.

On the issue of the fairness and equity of the arrangement, I hold that the debtor has failed to sustain the burden of proof. For neither the Referee's certificate nor the entire record which has been submitted in connection with the review—including the transcript of the hearings before the Referee—support the finding implicit in the Referee's order that the arrangement is fair and equitable, within the meaning of the Act.

By the arrangement the debtor obtains a discharge of liabilities scheduled at $20,-500 by a payment of something like $6,000. Yet the report of the accountants retained by the creditors' committee which was offered in evidence by the debtor showed the estate to have total assets of almost $36,-500.

Of these aggregate assets the merchandise was estimated in the accountants' report at upwards of $16,000. This was computed at cost, at wholesale, and was largely comprised of fresh stock. There is no evidence here, as some times appears when the value of mercantile stock is in issue, to furnish a basis for discounting the cost price on the ground that part of the stock was in broken packages or was stale. Nor was there evidence of shrinkage in value since the purchases were made. Purchases aggregating $16,000 had been made recently. And included in the accountants' report of assets was an item of accounts receivable unassigned of $15,000. There is no basis in the record for attributing to these accounts any specific value in a lesser amount. No appraisal either of merchandise or of the accounts receivable was included in the evidence before me.

With the record in this indeterminate state, the Referee could not reasonably find that it was fair and equitable that the debtor having assets which on the only evidence before me had a value of over $36,000, should be discharged of debts aggregating over $20,000 by the payment of some $6,000.

342

It must be borne in mind that the test of equity is not whether the creditors would receive less in liquidation. If the debtor says in effect "although the assets are fairly worth $8,500 to me I will try to get them for $6,000 in the hope that creditors will let them go for that rather than to accept the hazard and additional expense incidental to a liquidation", an arrangement on that basis is not equitable within the meaning of the Act. Thus to subject creditors to coercion is not consistent with equitable treatment. It has been so held in a case under Chapter X, 11 U.S.C.A. § 501 et seq. Case v. Los Angeles Lumber Products Co., supra. But one of the chief advantages provided by Chapter XI, 11 U.S. C.A. § 701 et seq., is the great economy of administration thereunder in comparison with the cost of administration in liquidation proceedings. I cannot believe that this feature of Chapter XI was intended to enable debtors to pay creditors less than the assets of the estate are really worth.

But on the other hand it does not necessarily follow that an arrangement to be equitable must provide for payments, in cash and on time, which shall in the aggregate fully equal the value of the assets. For necessarily a debtor who has just turned over all his property to the court for administration is limited in any cash payments which he can offer by what he can borrow. Of course he can seldom obtain a loan for the full value of a mercantile business which is his only basis for credit. And if successful in obtaining a loan he must reserve enough cash for working capital; only the balance can he pay in cash to old creditors on the confirmation of a plan. Whether he can properly be required to supplement the cash payments with deferred payments necessarily depends upon the prospective income of the business.

And so in all cases in which the payments, present and deferred, called for in the arrangement aggregate less than the fair value of the assets in the estate, it is difficult for me to understand how the arrangement can be confirmed without evidence that prospective earnings reasonably to be expected will not justify greater deferred payments. Indeed it is hard to see how a debtor can

demonstrate that its arrangement is feasible without some evidence of prospective earnings. See Collier, page 1173. And, of course, in considering evidence of prospective earnings the court will scrutinize closely their relation to prospective salaries, especially in cases of closely held corporations.

And so, let me make it plain that I do not hold that the record here affirmatively shows an absence of equity. I hold only that the record is insufficient for a finding based on "an informed, independent judgment of the court." Collier, 14th Ed., Vol. 8, p. 1176. Such a judgment is in all cases essential for the protection of minority creditors not assenting to the arrangement. It is especially necessary in a case such as this where acceptances of the arrangement have been secured through the activities of a so-called creditors' committee not appointed as provided for in Sec. 338, 11 U.S. C.A. § 738, but apparently through the inspiration of the debtor itself.

On one other ground also the Referee should have withheld confirmation. Sec. 362, 11 U.S.C.A. § 762, provides specifically that an application for confirmation shall not be received "before * * * the debtor has made the deposit required under this chapter and under the arrangement". The record fails to show compliance with this provision.

Altogether, the record here is such that it is, I think, within the discretion of the Referee to entertain an application for a rehearing on the confirmation (if compliance is made with Sec. 362) of the pending arrangement or any modification thereof. But if a further hearing is thus accorded, it is advisable that the notice of such hearing shall be coupled with a notice under Sec. 376(2), 11 U.S.C.A. § 776(2), so that the Referee, if he shall find on rehearing that the plan is not fair and equitable or does not otherwise comply with the Act even in the light of such further evidence as may be received, can proceed forthwith to an adjudication, if such a course shall seem advisable.

It is accordingly ordered that the case be returned to the Referee for further proceedings consistent with the rulings stated above.